UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NORVELLE SAMUEL LEE,

                      Case No. 09-12226

        Plaintiff,             Honorable David M. Lawson

v.

SHEET METAL WORKERS' NATIONAL
PENSION FUND,

        Defendant.
_____/

### OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO AFFIRM THE PLAN ADMINISTRATOR AND DENYING PLAINTIFF'S MOTION TO REVERSE THE PLAN ADMINISTRATOR

Several years ago, plaintiff Norvelle Lee was employed in the sheet metal industry as a welder and was a member of two union locals that were affiliated with Sheet Metal Workers International Association (SMWIA). As a union member, the plaintiff became entitled to benefits, including pension benefits, now administered by defendant Sheet Metal Workers' National Pension Fund (Fund), a multiemployer jointly-administered labor-management pension fund established pursuant to section 302(c)(5) of the Labor Management Relations Act, 29 U.S.C. § 186(c)(5), and a tax-qualified employee pension benefit plan within the meaning of sections 3(2) and 3(3) of ERISA, 29 U.S.C. § 1002(2), (3). Under the terms of the pension plan, a participant is entitled to normal retirement benefits upon attaining age 65. The plan also provides early retirement benefits, for which the plaintiff applied at age 55 and was denied. The trustees of the defendant pension fund determined that the plaintiff had not "retired" when he submitted his application, and his early retirement eligibility date was extended under a plan provision because he had engaged in disqualifying employment that postponed his right to receive early retirement benefits. The plaintiff

filed the present action alleging, among other things, that the defendant improperly denied his application for early retirement benefits and he was entitled to benefits under section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B). The parties filed cross motions on the administrative record, and the Court heard oral argument on November 30, 2010. The Court now finds that the defendant's interpretation of the plan was arbitrary, at least in part, and some of its reasons for denying the plaintiff early retirement benefits employed an unreasonable interpretation of the plan language. However, there is substantial evidence in the record to support the conclusion that the plaintiff is not presently entitled to early retirement benefits under the Plan's provisions. Therefore, the Court will grant the defendant's motion, deny the plaintiff's motion, and dismiss the case.

I. Facts and proceedings

A. Background

Plaintiff Norvelle Samuel Lee worked in the sheet metal industry from January 1977 until approximately March 2000. He was a member of the Sheet Metal Workers Local 110 in Kentucky until June 1986. In 1986, he moved to Michigan looking for work, and he joined Sheet Metal Workers Local 292 in Troy, Michigan. After withdrawing from the union altogether sometime in 2001 because of difficulties finding work in the sheet metal industry, the plaintiff worked for nine years for Chrysler LLC, which does not have a collective bargaining agreement with the SMWIA or any of its affiliated locals.

While at Chrysler, the plaintiff was a maintenance welder from March 2000 until November 2003 and from March 2007 to January 2008; an endurance driver driving prototype vehicles at Chrysler's proving grounds from July 2006 until December 2006; and a laborer assigned from the

jobs bank from November 2003 to July 2006, December 2006 to March 2007, and January 2008 until he retired from Chrysler on February 1, 2010.

Under the plan, a person who has accumulated the requisite pension credit or attained vested status is entitled to a monthly pension payment upon retirement at the "Normal Retirement Age." Plan § 5.03(a). "Normal Retirement Age" in most instances under the plan is 65 years old. Plan § 1.24(b). The plan also provides a right to early retirement benefits for persons 55 years old or older if certain conditions are met, which consist of a formula accounting for earned pension credit and years of service. Plan § 5.04(a). A plan provision extends the eligibility date for early retirement beyond age 55 if the participant engages in disqualifying work. Section 5.04(b)(1) of the Plan states:

> . . . for every calendar quarter in which a Participant or Employee, or a former Participant or Employee performs at least one hour of employment on or after September 1, 1988, in the Sheet Metal Industry that is not covered by a collective bargaining agreement between the Union and the employer, the early retirement date of said Participant or Employee will be delayed by six (6) months.

The plaintiff applied for early retirement benefits on May 20, 2008, one month before he retired from his job at Chrysler. He was 55 years old at the time and sought benefits to commence August 1, 2008. The benefits applications were submitted to the union locals in Kentucky and Troy. Local 292 granted the application, but Local 110 in Kentucky had had economic difficulties, and its members' pensions were transferred to and administered by the Sheet Metal Workers' National Pension Fund, the defendant in this case. On October 1, 2008, the Fund Coordinator sent the plaintiff a letter denying his benefits application on the ground that the plaintiff was not yet "retired" within the meaning of the Plan because his employment with Chrysler was disqualifying employment, which also and it operated to extend the plaintiff's early retirement date well beyond age 55. The defendant reasoned that all of the plaintiff's employment with Chrysler, which is an

automobile manufacturer, constituted work in the sheet metal industry. The Fund Coordinator noted that the plaintiff is still eligible for his pension at normal retirement age.

The plaintiff appealed the decision on December 7, 2008. On March 9, 2009, the Appeals Committee denied the plaintiff's appeal. The explanatory letter sent three days later stated that the work Chrysler performed was in the same or related business conducted by one or more contributing employers, and his employment with Chrysler was not covered by a collective bargaining agreement with an affiliate of the SMWIA. The Appeals Committee concluded that all of the plaintiff's work at Chrysler was disqualifying employment, which extended his eligibility date for early retirement.

The plaintiff then filed the present lawsuit, submitting a seven-count complaint on June 9, 2009. The defendant moved to dismiss all counts except the claim for pension benefits under section 502(a)(1)(B) of ERISA. The Court granted the motion and dismissed counts two through seven of the complaint. Thereafter, the parties filed their cross motions on the administrative record.

### B. Plan provisions

Under the Plan, a participant may apply for retirement benefits only if that person is "retired." Plan § 5.01. ("A Participant's eligibility to receive benefits is conditioned upon his retirement, as determined below, and his submission of an application for benefits in accordance with Article 8."). A participant is "retired"

> if he has ceased working in Covered Employment, as well as in any Disqualifying Employment, and such cessation of work is intended to be permanent. A Participant also will be treated as "retired" within the meaning of the Plan, if he only performs work that would result in the suspension of benefits as Disqualifying Employment but for the provisions of Section 8.06(b) or 8.06(c), and he otherwise satisfies the conditions of the Plan concerning post-retirement employment.

*Ibid.*

The plan defines "Disqualifying Employment" as follows:

When used in Section 8.06(a) and 8.06(b), the term "Disqualifying Employment" means:
(A) employment with any Contributing Employer;
(B) employment with any employer in the same or related business as any Contributing Employer;
(C) self-employment in the same or related business as a Contributing Employer;
(D) employment or self-employment in any business which is under the jurisdiction of the Union;
(E) employment in the Sheet Metal Industry that is not covered by a collective bargaining agreement between the Union and the employer.

Plan § 8.06(d)(1).

As mentioned above, the Plan allows a worker to apply for early retirement benefits at age 55, but that eligibility date "will be delayed by six (6) months" "for every calendar quarter in which . . . a former Participant . . . performs at least one hour of employment . . . in the Sheet Metal Industry that is not covered by a collective bargaining agreement between the Union and the employer." Plan § 5.04(b)(1). The plan defines "Sheet Metal Industry" as follows:

> The term "Sheet Metal Industry" shall mean any and all types of work covered by collective bargaining agreements to which the Union and/or any Local are a party; or under the trade jurisdiction of the Union, as that trade jurisdiction is described in the SMWIA's constitution; or in a related building trade; or any other work to which a sheet metal worker has been assigned, referred, or can perform because of his skill and training as a sheet metal worker.

Plan § 1.35. Section 5(t) of the SMWIA Constitution defines the trade jurisdiction of the Union to include "[a]ny and all types of sheet metal work, coppersmith work and mechanical work in connection with or incidental to the manufacture, fabrication, assembling, maintenance and repair of automobiles . . . ." AR 20. Section 5(z) of the SMWIA Constitution extends the trade jurisdiction of the Union to "[a]ny and all welding in connection with the work specified in this Article." AR 21.

### C. Administrative decision

The Fund Coordinator denied the plaintiff's initial application for benefits because he found that the plaintiff continued to perform work after March 2000 for Chrysler LLC. He reasoned that Chrysler assembles automobiles and found that work to be similar to the work performed by contributing employers. He concluded that the plaintiff's work at Chrysler was disqualifying employment under Plan section 8.06(d)(1)(B). The Fund Coordinator also found that the plaintiff's work at Chrysler was work in the Sheet Metal Industry because it was under the trade jurisdiction of the SMWIA, primarily because Chrysler "works with and manufacturing automobiles." AR at 16. He found, therefore, that the plaintiff's work at Chrysler also was disqualifying employment under Plan section 8.06(d)(1)(E). Because Chrysler had not signed a collective bargaining agreement with the SMWIA, the Fund Coordinator also concluded that the plaintiff's employment at Chrysler would extend his early retirement eligibility date under Plan section 5.04.

On appeal, the Appeals Committee also determined that the plaintiff was not "retired" because he worked as a maintenance welder at Chrysler. The Committee cited both sections 8.06(d)(1)(B) and 8.06(d)(1)(E) of the plan, and found the work to be disqualifying employment.

### D. Cross motions

The parties filed cross motions on the administrative record. As an initial matter, the plaintiff argues that the Fund Coordinator's decision is not entitled to deferential review in this Court because he has a conflict of interest arising from the his obligation to protect the Fund assets on the one hand and to protect vested benefits of the Plan participants on the other hand. The plaintiff also argues that the plan provision on disqualifying employment operates as a forfeiture of vested benefits in violation of section 203 of ERISA, *see* 29 U.S.C. § 1053(a)(1)-(2); the Fund Coordinator's

interpretation of the disqualifying employment provisions is unreasonable and overbroad because welding at an engine plant, driving at a test track, and working in the jobs bank should not be considered sheet metal work; and the plan documents did not make the participants reasonably aware of the possibility of forfeiture in advance.

The defendant counters with the argument that the Appeals Committee's interpretation of the Plan is reasonable, and its decision that the plaintiff had engaged in disqualifying employment faithfully tracks the Plan's language. It insists that the plaintiff's employment with Chrysler was "employment in the same or related business as a Contributing Employer" under section 8.06(d)(1)(B) of the Plan because the work Chrysler performs requires welding, numerous employers contributing to the Fund perform welding, and welding is a major part of the national apprenticeship curriculum. The defendant contends that Chrysler also performs work in the sheet metal industry, as that term is employed by the Plan, which is within the union's trade jurisdiction, so the plaintiff's work constitutes disqualifying employment under section 8.06(d)(1)(E) as well. The defendant also points out that as of the time of the administrative hearings, the plaintiff still was employed at Chrysler and therefore was not "retired." The defendant maintains that the plaintiff's subsequent retirement is not part of the administrative record and therefore he must file a new application for benefits for that fact to be considered. The defendant refutes the plaintiff's forfeiture argument by observing that the plaintiff still has rights to his regular retirement at age 65.

## II.  Discussion

### A.  Standard of review

In the remaining count of the complaint, the plaintiff challenges the denial of benefits under section 502(a)(1)(B) of ERISA, which authorizes an individual to bring an action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). "[T]he validity of a claim to benefits under an ERISA plan is likely to turn on the interpretation of terms in the plan at issue." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Regardless of the language of the plan that the administrative decision is "final and binding," section 502 of ERISA affords plan participants a judicial remedy. *Adams v. Ford Motor Co.*, 847 F. Supp. 1365, 1377 (E.D. Mich. 1994). In such an action, the Court considers only that evidence presented to the plan administrator at the time he or she determined the employee's eligibility. *Smith v. Ameritech*, 129 F.3d 857, 863 (6th Cir. 1997). The Court's review is limited to the administrative record. *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 615 (6th Cir. 1998).

The Supreme Court has held that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone*, 489 U.S. at 115. The plan here contains such language. Section 8.03 of the Plan gives the Fund's trustees discretionary authority over determinations of pension eligibility and benefits. Therefore, the Court normally would "apply the highly deferential arbitrary and capricious standard of review." *Cox v. Standard Ins. Co.*, 585 F.3d 295, 299 (6th Cir. 2009). The plaintiff maintains, however, that due to the Fund Coordinator's conflict of interest mentioned earlier, the proper standard of review is *de novo*.

Sixth Circuit law does not support the plaintiff's position. Although that court has acknowledged that "[w]hen the same entity determines eligibility for benefits and also pays those benefits out of its own pocket, an inherent conflict of interest arises," *Cox*, 585 F.3d at 299, the court also held that existence of a conflict of interest can "shape" the application of, but does not change, the arbitrary and capricious standard of review. *Miller v. Metro. Life Ins. Co.*, 925 F.2d 979, 984 (6th Cir. 1991) (holding that when the plan administrator has a conflict of interest, "the abuse of discretion or arbitrary and capricious standard still applies, but application of the standard should be shaped by the circumstances of the inherent conflict of interest" (citing *Brown v. Blue Cross & Blue Shield of Alabama, Inc.*, 898 F.2d 1556, 1561-63 (11th Cir.1990))); *see also Firestone*, 489 U.S. at 115 (a "conflict must be weighed as a factor in determining whether there is an abuse of discretion" (internal quotation marks and citations omitted)).

The Supreme Court recently reinforced the idea that a conflict of interest exists when a plan administrator both evaluates claims for benefits and pays benefits claims. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 112 (2008). The Court instructed lower courts to consider a structural conflict of interest, but counseled that the weight accorded to that factor should vary depending on the circumstances of the case.

> The conflict of interest at issue here, for example, should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration. . . . It should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decisionmaking irrespective of whom the inaccuracy benefits.

*Glenn*, 554 U.S. at 117 (citations omitted).

The relationship between the Fund trustees and the Fund itself is considerably different than that of an employee benefit plan and an insurance company that funds and administers it. In this case, the Trustees of the defendant Fund determine eligibility for pension benefits and the benefits are paid from a fund to which contributing employers pay. The final decision was rendered by an Appeals Committee consisting of two trustees, one union trustee and one employer trustee. Thus, the Trustees both determine who is eligible for Fund benefits and pay the benefits out of the Fund of which they are the Trustees, and to that extent there may be a structural conflict of interest. *See Durakovic v. Bldg. Serv. 32 BJ Pension Fund*, 609 F.3d 133, 138 (2d Cir. 2010) (holding that a fund organized pursuant to 29 U.S.C. § 186(c)(5) was conflicted within the meaning of *Glenn*); *but see Klein v. Cent. States, Se. & Sw. Areas Health & Welfare Plan*, 346 F. App'x 1, 3-4 (6th Cir. 2009) (holding that no conflict existed where the Plan is a "multi-employer benefit plan without a profit motive, and individual trustees receive no personal financial benefit from approving or denying claims," and where "the record contains no evidence that cost savings concerns motivated the Trustees' decision"); *Wildeboer v. Sheet Metal Workers' Nat'l Pension Fund*, No. 09-39-DLB, 2010 WL 821122, at *4-5 (E.D. Ky. Mar. 5, 2010) (finding that no conflict of interest existed where the Plan was a "jointly-administered multi-employer fund where benefits are paid from a pool of money funded by multiple employers and decisions are made by employer and union trustees"). But the parties have not presented any evidence of "circumstances suggest[ing] a higher likelihood that [the conflict of interest] affected the benefits decision." *DeLisle v. Sun Life Assur. Co. of Canada*, 558 F.3d 440, 445 (6th Cir. 2009) (quotation marks and citation omitted). The Appeals Committee meeting minutes from March 2009 do not suggest that the Trustees were affected by any improper consideration in affirming the denial of early retirement benefits to the plaintiff. Nor does anything

else in the administrative record suggest improper motivation on the part of Trustees in denying the plaintiff's claim. The Court believes that the traditional arbitrary-and-capricious standard of review governs this case, and the alleged structural conflict does not deserve much weight.

The arbitrary-and-capricious "standard [of review] is the least demanding form of judicial review of administrative action. When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Davis v. Kentucky Fin. Cos. Ret. Plan*, 887 F.2d 689, 693 (6th Cir. 1989) (internal quotes and citation omitted). An administrator's decision will be upheld under the arbitrary and capricious standard "if it is the result of a deliberate, principled reasoning process, and is rational in light of the plan's provisions." *Cooper v. Life Ins. Co. of N. Am.*, 486 F.3d 157, 165 (6th Cir. 2007) (internal citations omitted). A decision reviewed according to this standard must be upheld if it is supported by "substantial evidence." *Baker v. United Mine Workers of Am. Health and Ret. Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991). Substantial evidence supports an administrator's decision if the evidence is "rational in light of the plan's provisions." *See Smith*, 129 F.3d at 863. However, "the federal courts do not sit in review of the administrator's decisions only for the purpose of rubber stamping those decisions." *Moon v. Unum Provident Corp.*, 405 F.3d 373, 379 (6th Cir. 2005) (citing *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003) ("Deferential review is not no review, and deference need not be abject.")).

### B. Forfeiture of vested benefits

The plaintiff argues that the Plan's disqualifying employment provision causes a *de facto* forfeiture of participants' fully vested pension benefits and therefore violates ERISA. However,

"[t]he term 'forfeiture' normally connotes a *total* loss in consequence of some event rather than a limit on the value of a person's rights." *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 513 (1981) (emphasis added; internal quotation marks and citation omitted). Under Section 203(a) of ERISA, an employee's right to his normal retirement benefit is nonforfeitable upon the attainment of *normal* retirement age and satisfaction of certain other conditions. The statute reads:

> Each pension plan shall provide that an employee's right to his normal retirement benefit is nonforfeitable upon the attainment of normal retirement age and in addition shall satisfy the requirements of paragraphs (1) and (2) of this subsection.
>
> (1) A plan satisfies the requirements of this paragraph if an employee's rights in his accrued benefit derived from his own contributions are nonforfeitable.
>
> (2)(A)(i) In the case of a defined benefit plan, a plan satisfies the requirements of this paragraph if it satisfies the requirements of clause (ii) or (iii).
> (ii) A plan satisfies the requirements of this clause if an employee who has completed at least 5 years of service has a nonforfeitable right to 100 percent of the employee's accrued benefit derived from employer contributions.
> (iii) A plan satisfies the requirements of this clause if an employee has a nonforfeitable right to a percentage of the employee's accrued benefit derived from employer contributions determined under the following table:
>
> | Years of service: | The nonforfeitable percentage is: |
> |---|---|
> | 3 | 20 |
> | 4 | 40 |
> | 5 | 60 |
> | 6 | 80 |
> | 7 or more | 100 |

29 U.S.C. § 1053(a)(1)-(2).

ERISA also defines the term "accrued benefit" as used in section 1053 with reference to a defined benefit plan as "the individual's accrued benefit determined under the plan and . . . expressed in the form of an annual benefit *commencing at normal retirement age*." 29 U.S.C. § 1002(23)(A) (emphasis added); *see also* Treas. Reg. § 1.411(a)-7(a)(1) (excluding early retirement benefits from the definition of "accrued benefits"). Consistent with these statutes and regulations,

many courts — including the Sixth Circuit — reject the idea that pension plan provisions disqualifying participants from early retirement benefits violate ERISA. *See Whisman v. Robbins*, 55 F.3d 1140, 1147-48 (6th Cir. 1995) (employee's post-retirement employment with the United States Postal Service warranted suspension of early retirement benefits he received under multiemployer pension plan, which provided for suspension of pension payments "for all periods of reemployment in the Teamster Industry" and defined "Teamster Industry" as "all public and private work covered, or of the type covered, by any Collective Bargaining Agreement or any Teamster Contract"); *see also Militello v. Cent. States Se. & Sw. Areas Pension Fund*, 209 F. Supp. 2d 923, 932-33 (N.D. Ill. 2002) (holding that Section 1053(a) applies only to benefits at normal retirement age); *cf. Cattin v. Gen. Motors Corp.*, 955 F.2d 416, 420 & n.1 (6th Cir. 1992) ("Plaintiffs have conceded that the non-forfeiture provision of the Employee Retirement Income Security Act . . . , 29 U.S.C. § 1053, did not prohibit GM from amending its retirement plan to eliminate their early retirement benefits, including the social security supplements."). These courts subscribe to the view that Congress "did not intend for early retirement supplements to be unforfeitable," *Chambless v. Masters, Mates & Pilots Pension Plan*, 571 F. Supp. 1430, 1440-41 (S.D.N.Y. 1983) (quoting *Riley v. MEBA Pension Trust*, 586 F.2d 968, 970 n.2 (2d Cir. 1978)), and consider the deprivation of early retirement benefits as a "suspension" of benefits, not their "reduction or elimination." *Whisman*, 55 F.3d at 1147.

The Court agrees with that reasoning. The Plan's disqualifying employment provision and its effect on extending the plaintiff's eligibility for early retirement benefits do not violate 29 U.S.C. § 1053.

The plaintiff also argues that the denial of early retirement benefits conflicts with section 3(19) of ERISA. That statute defines a "nonforfeitable" pension benefit as a claim to an immediate or deferred benefit that "arises from the participant's service," "is unconditional," and "is legally enforceable against the plan." 29 U.S.C. § 1002(19). This definitional statute also states that "a right to an accrued benefit derived from employer contributions shall not be treated as forfeitable merely because the plan contains a provision described in section 1053(a)(3) of this title." *Ibid.* Section 1053(a) states that "[a] right to an accrued benefit from employer contributions shall not be treated as forfeitable solely because the plan provides that the payment of benefits is suspended for such period of time as the employee is employed, subsequent to commencement of payment of such benefits . . . in the same industry, in the same trade or craft, and the same geographic area covered by the plan, as when such benefits commenced." 29 U.S.C. § 1053(a)(3)(B)(ii).

The plaintiff's argument would have some purchase if the pension benefit he was discussing was his accrued benefit payable at normal retirement age. However, the statutes quoted above do not prohibit withholding or suspending benefits payable before that milestone. The purpose of these sections is to protect plan participants' accrued benefits from forfeiture, but that does not mean that a plan cannot provide for suspension of benefits before they are otherwise due. Subsection (a)(3) contemplates that a plan may contractually provide for withholding or suspending benefits under the conditions stated therein without effecting a forfeiture. *See Eisenrich v. Minneapolis Retail Meat Cutters & Food Handlers Pension Plan*, 574 F.3d 644, 646 (8th Cir. 2009) (holding that "multiemployer plans may condition benefits on an employee's promise not to engage in certain kinds of employment after retirement"). In *Nachman Corp. v. Pension Ben. Guaranty Corp.*, 446 U.S. 359 (1980), the Supreme Court explained that "[a] provision in a plan which purports to

sanction forfeiture of vested benefits for any reason, *other than one listed in subsection (a)(3)*, would violate this section after January 1, 1976, its effective date." *Id.* at 367 n.10 (emphasis added). And the Department of Labor's regulation on the subject confirms that point:

> A plan may provide for the suspension of pension benefits which commence *prior to the attainment of normal retirement age* . . . for any reemployment and without regard to the provisions of section 203(a)(3)(B) and this regulation to the extent (but only to the extent) that suspension of such benefits does not affect a retiree's entitlement to normal retirement benefits payable after attainment of normal retirement age, or the actuarial equivalent thereof.

29 C.F.R. § 2530.203-3(a) (emphasis added).

The disqualifying employment provisions of the Plan do not create a forfeiture of benefits. The Plan provisions challenged by the plaintiff are not inconsistent with 29 U.S.C. § 1002(19).

### C. Notice of forfeiture

The plaintiff's argument that the Plan did not give him fair notice of the effect of disqualifying employment on early retirement eligibility, or that the provision was applied to him after the fact, likewise fails. The Plan was not amended in a way that pretermitted the plaintiff's right to early retirement. And the Plan's provisions relating to disqualifying employment were plainly set forth.

The plaintiff relies heavily on *Hillis v. Waukesha Title Co.*, 576 F. Supp. 1103 (E.D. Wis. 1983), to support his argument, but that case provides him no help. In that case, it was undisputed that the defendants failed to inform the plaintiff of the non-competition clause, since the plaintiff was never provided a summary Plan description or a copy of the Plan. Further, in *Hillis*, the offending clause deprived a participant of his entire vested interest in the pension, including his pension at a normal retirement age, if a participant aided a competitor within two years of leaving the employer. In the present case, there is no suggestion that the plaintiff was not provided with a

-15-

copy of the Plan or summary plan description upon joining the union or at some point during his tenure. Nor does the plaintiff risk losing his normal retirement benefits, which will become available to him at the age of 65.

### D. Disqualifying employment

The remaining question is whether the defendant's determination that plaintiff's employment at Chrysler amounted to Disqualifying Employment as defined by the Plan was arbitrary and capricious. The Fund Coordinator and the Appeals Committee relied on two sections of the Plan when they found that the plaintiff's work at Chrysler was disqualifying. However, the Appeals Committee minutes from its March 9, 2009 meeting indicate that the Committee conflated subsections 8.06(d)(1)(B) and 8.06(d)(1)(E), equating work for an "employer in the same or related business" (in subsection (B)) with "employment in the Sheet Metal Industry" (in subsection (E)). The minutes reflect an understanding that the plaintiff was employed "with Chrysler LLC of Auburn Hills as a maintenance welder." AR at 2. The Committee observed that the Fund Coordinator "deemed this work in the Sheet Metal Industry as welding is practiced throughout the industry." *Ibid.* It then reviewed the definition of "Sheet Metal Industry" in Plan section 1.35, "noted that numerous employers perform welding," AR at 3, and concluded that the plaintiff's "employment with Chrysler LLC was work in the Sheet Metal industry as defined in Section 1.35, and Disqualifying Employment under Section 8.06(d)(1)(B) and 8.06(d)(1)(E) of the Plan . . . ." *Ibid.*

The Plan does not define what "employer in the same or related business" means, but the language suggests that the focus of this provision is on the activity of the employer, not the task the employee performs. There is no discussion in the administrative record, however, of how or why

the defendant concluded that Chrysler was in the same business as its signatory employers. The Plan's language must be read in light of the statute, which permits suspension of pension benefits by multiemployer plans when the participant takes new employment "in the same industry, in the same trade or craft, and the same geographic area covered by the plan." 29 U.S.C. § 1053(a)(3)(B)(ii). "The term 'industry' means the business activities of the types engaged in by any employers maintaining the plan." 29 C.F.R. § 2530.203-3(c)(2)(i). It does not refer to "the outside industry." *Whisman*, 55 F.3d at 1149. The Fund Coordinator's letter to the plaintiff noted that "Chrysler LLC assembles automobiles," AR at 15, but there is no evidence in the record, for example, that any of the defendant's contributing employers is involved in manufacturing automobiles, which, of course, is Chrysler's primary business.

Importing the language defining "Sheet Metal Industry" does not bridge that gap. Section 1.35, defining that term, makes specific reference to "any and all types of *work* covered by" a collective bargaining agreement or within the Union's trade jurisdiction, "or any other *work to which a sheet metal worker has been assigned, referred, or can perform* because of his skill and training as a sheet metal worker." Plan § 1.35 (emphasis added). That definition is clearly tasked focused, that is, it requires consideration of the work performed by the plan participant. Similarly, reference to the SMWIA's constitution does not support the finding that Chrysler is "in the same or related business," because that language is task-oriented as well. Section 5(t) of the SMWIA Constitution defines the trade jurisdiction as "[a]ny and all types of sheet metal *work*, coppersmith *work* and mechanical *work* in connection with or incidental to the manufacture, fabrication, assembling, maintenance and repair of automobiles . . . ." AR 20 (emphasis added). The fact that certain work may be characterized as sheet metal work, and thus within the Union's trade jurisdiction, does not

render an employer requiring those skill generally within "the same or related business" as a covered employer.

The defendant's conclusion that all of the plaintiff's work at Chrysler was disqualifying employment under section 8.06(d)(1)(B) on the ground that Chrysler was engaged in the same business as a covered employer, therefore, was arbitrary because it was not rational in light of the Plan's provisions and was not supported by substantial evidence in the administrative record. *See Shelby Cnty. Health Care Corp. v. Southern Council of Indus. Workers Health and Welfare Trust Fund*, 203 F.3d 926, 935 (6th Cir. 2000) ("A plan administrator's interpretation of ambiguous provisions must, however, be reasonable.").

However, the Fund's reliance on section 8.06(d)(1)(E), at least with respect to the plaintiff's employment with Chrysler as a welder, is rational in light of the Plan's provisions. Unlike section 8.06(d)(1)(B), section 8.06(d)(1)(E) focuses on the kind of work actually performed by the Plan participant for a non-contributing employer, i.e., "employment in the Sheet Metal Industry." Section 1.35 of the Plan defines "Sheet Metal Industry" in terms of the SMWIA'a trade jurisdiction as described in its constitution. And article I, sections 5(t) and 5(z) of that constitution claims jurisdiction over "[a]ny and all types of sheet metal work, coppersmith work and mechanical work in connection with or incidental to the manufacture, fabrication, assembling, maintenance and repair of automobiles, buses, trucks" and "[a]ny and all welding in connection with the work specified in this Article." AR 20-21. Applying this language requires a functional approach, which means "looking beyond the skills typically associated with a particular job" and "look[ing] to the skills put to 'use by the [participant].'" *Eisenrich*, 574 F.3d at 650 (citing 29 C.F.R. § 2530.203-3(c)(2)(ii)).

The record indicates that the plaintiff was employed by Chrysler as a maintenance welder from March 2000 until November 2003 and from March 2007 to January 2008 at one of Chrysler's engine plants. It was reasonable for the defendant to conclude that working as a welder was "sheet metal work [or] mechanical work . . . incidental to the manufacture . . . of automobiles." The plaintiff's work as a welder for Chrysler, therefore, was disqualifying employment under section 8.06(d)(1)(E) of the Plan. *See Wildeboer*, 2010 WL 821122, at *6 (affirming Sheet Metal Workers' National Pension Fund's denial of early retirement benefits to a plaintiff who, in his new employment, used welding and welding was admittedly one of the skills, albeit incidental, used in his previous occupation).

There is no evidence in the record, however, that the plaintiff's assignment to Chrysler's jobs bank or employment as an endurance driver amounted to "employment in the Sheet Metal Industry," and therefore was disqualifying under section 8.06(d)(1)(E). There is no evidence of the duties the plaintiff performed when assigned to the jobs bank, and there is no explanation in the record how driving at the test track would fall within the trade jurisdiction of the union. Because there is not substantial evidence in the administrative record that the plaintiff's employment at Chrysler in those capacities was disqualifying employment under the provisions of the plan, the determination that the plaintiff was not "retired" when he applied for benefits is arbitrary and capricious.

This conclusion, however, does not help the plaintiff in the end. Section 5.04(b) of the Plan calls for delaying eligibility for early retirement benefits six months for each calendar quarter in which the participant engages in at least one hour of disqualifying employment. The record indicates that the plaintiff was employed as a maintenance welder for parts of twenty-one quarters, which would delay his eligibility for early retirement benefits by 10.5 years, that is, until after his

sixty-fifth birthday. The Fund Coordinator and the Appeals Committee addressed the delay factor, although they did not calculate the length of the delay or specifically apply the provision. Nonetheless, the record supports the ultimate conclusion that the plaintiff is not entitled to early retirement benefits according to the Plan's provisions.

III. Conclusion

Although the Court finds that certain aspects of the defendant's decision denying the plaintiff's application for early retirement benefits were arbitrary and capricious, for the reasons stated above, the Court concludes that denial is supported by substantial evidence in the record and is rational in light of the Plan's provisions.

Accordingly, it is **ORDERED** that the defendant's motion to affirm the administrator's decision [dkt #20] is **GRANTED**.

It is further **ORDERED** that the plaintiff's motion to reverse the administrator's decision [dkt #18] is **DENIED**.

It is further **ORDERED** that the complaint is **DISMISSED WITH PREJUDICE**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: December 20, 2010

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on December 20, 2010.

s/Deborah R. Tofil
DEBORAH R. TOFIL

---